WILLIAM S. MORTON et al., as and Constituting the Board of Health of the Town of Great Valley, County of Cattaraugus, State of New York, Plaintiffs, *v.* ST. PATRICK'S ROMAN CATHOLIC CHURCH SOCIETY OF SALAMANCA, New York, Defendant.

(Supreme Court, Cattaraugus Equity Term, September, 1907.)

Religious societies — Property and funds — Control of property — Subject to powers of board of health as to land held for cemetery purposes.
Health — Health boards and sanitary officers — Orders and decisions of board — Detriment to health a jurisdictional fact.

> The power conferred by the Religious Corporations Law (L. 1895, c. 723, § 7), to take and hold real property for cemetery purposes, is subject to the exercise of the police power of the State

including the legitimate exercise of the powers of boards of health in towns.

In an action by the town board of health to restrain a religious corporation from using certain of its real property for cemetery purposes upon the ground that said board of health had passed a resolution or order to the effect that the use of defendant's lands, or any part thereof, for cemetery purposes would be detrimental to public health, the determination of the board is not final nor conclusive upon defendant and the burden is upon the plaintiff to establish that the use of defendant's property for burial purposes is or will become, in some way, dangerous or destructive to public health.

Where defendant's lands comprise nearly five acres and only two dead bodies are interred therein and the immediate vicinity is sparsely settled and consists largely of forest and farming land, and the rear boundary of the tract is a cut for the tracks of a railroad on the other side of which is another cemetery, and the nearest house is more than one hundred feet distant and in the ordinary course of nature the number of burials would for the present vary from twenty-five to thirty-five annually, the evidence is not sufficient to warrant the conclusion that the properly regulated use by the defendant of its lands for burial purposes would be detrimental to public health.

ACTION for injunction to restrain defendant, a religious corporation, from using certain of its real property in the town of Great Valley for cemetery purposes.

Carey D. Davie and W. K. Harrison, for plaintiffs.

Thos. H. Dowd, Jas. P. Quigley and Wm. G. Laidlaw, for defendant.

POUND, J. The objection that the board of health of the town of Great Valley has not legal capacity to sue, except in the name of the town (Board of Health v. Magill, 17 App. Div. 249), has been waived by failure to raise the same by answer or demurrer. Code Civ. Pro., § 499.

The general power conferred by the Religious Corporations Law upon religious corporations to take and hold real property for cemetery purposes (Laws of 1895, chap. 723, § 7), does not vest in such corporations the power to locate

and maintain at will their cemeteries in towns, but confers such power subject to the exercise of the police power of the State, as corporations generally exercise their enumerated powers subject to such police power, including the legitimate exercise of the powers of boards of health in towns. Eagle Ins. Co. v. Ohio, 153 U. S. 446; People ex rel. Oak Hill Cemetery Assn. v. Pratt, 129 N. Y. 68. The health laws and the cemetery laws do not conflict. The power to acquire lands for cemetery purposes legalizes the establishment by religious corporations of cemeteries in towns. Such cemeteries are not nuisances *per se,* but may be or become nuisances in fact (6 Cyc. 713, and cases cited), and as such they are subject to injunctive action by local boards of health.

The question whether the board of health had power to make the general order of September 6, 1902, that no cemetery or burial ground should be established within the limits of the town without the consent of the said board, is not necessarily involved in the decision of this case.

The Public Health Law (§ 21) provides that a local board of health " shall make    *    *    *    orders and regulations for the suppression of nuisances and concerning all other matters in its judgment detrimental to the public health in special or individual cases."

The question is whether the resolution or order of July 25, 1905, of the board of health of the town of Great Valley, to the effect that the use of defendant's lands or any part thereof for cemetery purposes would be detrimental to public health and is, therefore, prohibited, is sustained by the evidence in the case. Was said board justified in making such order? Its determination is not final nor conclusive upon defendant, nor had it power to make the same unless the prohibition of the use of said lands for cemetery purposes was necessary and proper for the preservation of public health. People ex rel. Copcutt v. Board of Health, 140 N. Y. 1.

The burden in this action is upon the plaintiffs to establish that the use of the defendant's property for burial purposes is or will become in some way dangerous or destructive to public health.

Supreme Court, September, 1907. [Vol. 56.

Defendant's cemetery lands in suit are nearly five acres in area. Only two dead bodies are now interred therein. The village of Salamanca, having a population of about 6,000 inhabitants, has for its eastern boundary the town of Great Valley; and the cemetery is located in said town, not far from the village line. The immediate vicinity is sparsely settled and consists largely of forest and farming land. The rear boundary of the cemetery tract is the cut for the tracks of the Erie railroad, and across said cut is Woodlawn Cemetery. On a tract of some 400 or 500 acres of land immediately about the cemetery were only about six houses when this action was begun. The nearest house to the cemetery is over 100 feet from the cemetery line. In the ordinary course of nature the number of burials would for the present vary from twenty-five to thirty-five per annum. The old cemetery of the defendant is in the same town, in an equally settled neighborhood, and is now fully occupied with graves; but no bad effects to the health have been satisfactorily traced to such cemetery.

It would seem that the only consequences of an evil nature that can be anticipated from the use of defendant's land for cemetery purposes are the remote possibility of the contamination of wells in its vicinity which are already endangered by the close proximity of privies, and of the distribution of disease germs by the air. These dangers are too slight and uncertain to be the basis of injunctive relief.

So long as inhumation, or the consigning of the body to the earth, remains the custom of civilized peoples in disposing of their dead, some remote danger of air and water contamination will arise from the proximity of cemeteries to places of human abode. Doubtless safety dictates that they should be as remote as convenience will permit. That such danger from new rural cemeteries in sparsely settled regions is more speculative than real is demonstrated by common knowledge, medical and sanitary science and legislative policy. It was conceded upon the trial that the Roman Catholic Church teaches as a religious doctrine that the disposal of dead bodies by cremation is not sanctioned and is sinful. Cemeteries must be provided in practicable locations for

many years to come to satisfy the wants of our people until the practice of incineration or burning of dead bodies, however preferable on sanitary grounds it may be, meets with more general favor than it has as yet won.

The evidence satisfies me that the properly regulated use by the defendant of the lands in suit for burial purposes will not for a long time, if ever, become an appreciable menace to the health of the neighborhood by corrupting either air or water.

Judgment for defendant, with costs.